IN THE CIRCUIT COURT OF IZARD COUNTY, ARKANSAS
THE 16TH JUDICIAL CIRCUIT COURT
CIVIL DIVISION
CITY OF MELBOURNE, ARKANSAS

TOMMY HENDERSON                                          PLAINTIFF

VS                          CV# 2007 - 832

CORRECTIONAL MEDICAL SERVICES et al.                    DEFENDANTS
    GEORGE WILSON, TOM BRADSHAW,
    DOTTIE YARBOUGH, DR. ROLAND JOHN ANDERSON,
    DR. JANICE ALEXANDER, DR. REBECCA JOHNSON,
    DR. OLABODE OLUMUNFIN, DR. MOHAMMED AHMED,
    DR. ROBERT SCOTT, JANICE BLANKENSHIP,
    SANDRA STRATTON/ASHCRAFT, DR. SANGRECTRA DOSHI-JAIN
    JOANN BURNETT, TOM MANWARING, DR. HOARCE MARVIN JR.
    AND
    FELIX LIMB AND BRACE CO. et al.
    LELAND FELIX,

- COMPLAINTS - COLOR OF LAW, NEGLIGENCE, Pcoduct Liability
MEDICAL MALPRACTICE AND CIVIL RIGHTS ACTS

Now comes the Plaintiff, Tommy Henderson, pro se, ADC # 93098, a resident of Izard County, Calico Rock, Arkansas, address HC 62 Box 300 an inmate for the Department of Corrections hereby with a cause of action, the Plaintiff alleges that the Defendants violated the Civil Rights Act of 1993 and for those doctors who have, or are working for the Defendant Correctional Medical Services, that many issues to which the Plaintiff which to bring the complaint herewithin.

The general information of Correctional Medical Services, Inc. is a contracted company to which the Arkansas Department of Corrections hired CMS to give adequate medical care to all inmates of ADC. The contract also provides dental and mental health care.

CMS, a headquarted private company on Olive Boulevard in West St. Louis County, is the nations largest correctional health and mental and dental health care company that is privately owned an operations in over 30 states.

See "Health Care Behind Bars Report" as attached, exhibit # 1

The St. Louis Post-Dispatch newspaper investigated CMS to which "Health Care Behind

1

EXHIBIT
A

Bars" a report that was conducted to show to many organizations, state agencies, federal agencies, doctors, in a surprising report that the nations inmates, their families, society, are bring risks of this adequate medical care is not being standards of care, but a shocking report that the public needs to be aware of that many deaths, neglect, and the "bottom line, that CMS is trying to show in its mission statement of "making a difference"

See attach copy – exhibit # 2

That "People making a difference" to which the plaintiff will show to this court, and the public that "CMS" is below-standard in medical and mental, dental care to which posing a risk to other inmates, guards, visitors, staff, families and those who have died while incarcerated.

As this general information to which the Plaintiff, with witness's subpoena, the attitude of unsettling findings by the team of the St. Louis Post-Dispatch newspaper to which may also be subpoena at jury trial.

Many questions to the quality and motives behind much of today's correctional health care, there are reasons to these unsettling facts and issues that are needed to come to the attention to lawmakers, agencies, those who pay millions of dollars to house, and the care of inmates behind bars.

This case is one of many that have been filed and many complaints by inmates who are speaking loudly to the attention of "serious medical needs" and what really goes on behind bars for inmates of the incarcerated to which at worst, it's a picture of an industry that takes advantage of the public's ill will towards inmates to give poor care while making a profit.

The Plaintiffs complaint are genuine issues of facts, evidence, to his amputation of L great toe and problems that arosed from the neglect and medical malpractice that even "inflicted unwanton pain that unnecessary" of "cruel and unusual punishment"

As the Plaintiff, Tommy Henderson, has given the Defendants more than the opportunity to settle this out of court, giving "60" day notice, grievances from 1 to 80 or so, that more than gross negligence to which doctors, staff of CMS where treating me of my complaints, but they where not adequate or even reasonable, well below-standards that to which the Plaintiff will provide medical expert testimony, and several witness's with a jury trial.

The plaintiff prior to his 10/10/05 incarceration to ADC, he entered DGU at Pine Bluff, Arkansas with a level grade # 1 or 2 diabetic ulcer on his L foot. Prior to this date, problem of his left and right foot from blisters of his feet to which started on Thanksgiving Day 2004.

PAGE 11/28 * RCVD AT 8/8/2007 5:28:42 AM [Central Daylight Time] * SVR:FAXSERVE/0 * DNIS:0 * CSID: * DURATION (mm-ss):09-56

With a general M.D.'s office visit, the physician a M.D. sent the plaintiff to a "foot specialist," a podiatrist that podiatrist is Dr. Alex Dellinger of Little Rock, Arkansas. Treatment and diagnosis and follow-care was well above-standard of care and recovery with proper support shoes, treatment by Dr. Dellinger, weekly visits and debridment of skin and pictures before and after of those visits to which medical records are attached as exhibits # 3.

Upon the treatments evidence of bone scans and operation of drainage of infection in March of 2005 that long term antibiotics and extreme healing of the non-bearing weight supports shoes, to which will be as an exhibit # 4 at trial with jury.

These support shoes along with the adequate medical care well above standards, the Plaintiff was 90% healed of all diabetic ulcers from the (exhibit # 3) in pictures as to which witness at trial will provide what the only ulcer on the left from 7/20/05 to 10/10/05 and there after up to the amputation that could have been prevented but was not.

### For the Plaintiffs cause of action, the following
### complaints, to which the Plaintiff alleges and states:

1.    This is also a civil rights case under Arkansas law, and that it is being filed at this time to toll the statute of limitations.

2.    This is a medical malpractice case that is being filed at this time to toll the statute of limitations.

3.    This is also a negligence case that is being filed at this time to the toll of statute of limitations.

4.    This is also a color of law case that is being filed at this time to toll the statute of limitations.

5.    This is also a case of "product" failed to work properly to the orders medically from doctors of CMS who wanted a non-weight bearing insole to be put in tennis shoes, for the left foot to which the product of insole from Felix Limb and Brace, where Leland Felix filled the orders of doctors of CMS but the "negligence" of CMS doctors not following up on the results of this product that did not do its job of keeping the L great toe from the non-weight bearing use while walking.

### SEE # exhibit # 4 at jury trial -- (original insole as evidence)

6.    Notice given to all Defendants to the best of the Plaintiff's knowledge of who defendants at fault of wrongdoing etc. to this case.

3

SEE # exhibit # 5 at filing (copies of document to defendants)

7.      Several doctors that are involved in this case who provided care, or treatment or diagnosis and the lack of adequate medical care, who are engaged in the specialty of general practice, to nurse practitioner, to internal medicine, but failed to be specialist of a podiatrist, or orthopedic doctor, but they engage in the practice in Lincoln County, Jefferson, Izard Counties in Arkansas.

8.      The identities and addition of those CMS staff, ANP's RNP's and hired doctors of CMS are as the following correct address of the central office of CMS of Arkansas is as the following:

Address of CMS at Arkansas at Pine Bluff

For the following CMS staff

George Wilson, Tom Bradshaw, Dottie Yarbough, Janice Blankenship, Dr. Roland John Anderson, Dr. Robert Scott, Dr. Hoarce Marvin Jr., Sandra Stratton/Ashcraft, Joann Burnett, Tom Manwaring, RNP Janice Alexander, Rebecca Johnson, ANP

6814 Princeton Pike Road

Pine Bluff, AR 71602

#870-267-6297

9.      Dr. Mohammed Ahmed left CMS from Varner Unit on June 30, 2006.  His address information is from the Arkansas State Medical Board Records

SEE # exhibit # 6 as attached.

10.     Doctor Olabode Olumunfin was fired approx 9/1/06 from CMS from problems of state medical malpractice violations prior to this complaint.  To which the probation for the conduct violation and address of Doctor Olabode Olumunfin is from the records of the Arkansas Medical Board.

SEE # exhibit # 7 as attached.

11.     Doctor Sangrecta Doshi-Jain may have also been released from CMS, but Defendants information of address and general information is from the records of the State Medical Board of Arkansas

SEE exhibit # 8 as attached.

12.     All identities of CMS under this motion et al. and unknown identities of CMS to the Plaintiff, the Plaintiff reserves the right to address's for the pseudo – names, address's when he has determine the correct information of all identities of all tortfensors in accordance with Ark.

4

Code Ann. § 16-56-125 of (1987)

13.   The amount in controversy exceeds the sum of $75,000.00 (seventy-five thousand dollars) exclusive of interest and cost

14.   The acts and omissions herein after complained of occurred in Lincoln, Jefferson, Izard County, Arkansas within the last two (2) years.

15.   Notices of Intent to sue for the complaints was sent by U.S. postage mailed by ADC officials to the defendants attorney, Humphery and Lewis of White Hall, AR.

    Michelle Banks Odum

    AR. # Bar 94135

    P.O. Box 20670

    White Hall, AR 71612-0670

    #870-247-7035

on April 3rd 2007 by certificate of service as in the document as attached.

**SEE exhibit # 9 as a copy**

16.   This court has jurisdiction of the parties and the subject matter and venue is proper in this county.

17.   The Plaintiff pleads that this case stays in Izard county and request orders from the court to have the Plaintiff not be transferred by an order given to ADC staff officials by a restraining order and order of protection from retaliation of both parties until such agreement between parties are in agreement of such release of those orders,

18.   Each exhausted grievance of the complaints by the Plaintiff are as in the filing of the federal case Henderson vs. CMS 05:06 CV 250 SWW/HDY as the grievances are of 1 thru 80 and more but will have copies available to the courts upon discovery.

**SEE exhibit # 10 as attached**

## Statement of Claim of Mal-practice

19.   Janice Alexander RNP, Rebecca Johnson, ANP of DGU under Dr. Olabode Olumunfin guidance provided diagnosis and treatment between 10/10/05 to 10/17/05 failed to provide adequate medical care, which betadine soaks and daily dressing changes, with no request documents of my past medical history requested, the Plaintiff pleaded for these records ordered during this time

    Betadine soaks and walking on this diabetic ulcer was wrong treatment and proper

5

treatment should have been bed rest, sugars levels controlled, culture of infection, adequate antibiotics to which even no support shoes, while walking on the ulcer grew bigger and never had a chance to heal properly, below-standard of care betadine soaks spreads infections in foot. SEE exhibit # 11 as attached, Williams vs. U.S., 747 F.Supp 967, 1990 Lexis 12488 "Diabetics with major foot problems"

20.     On or approx 10/17/05 transferred to Varner Unit and CMS staff continued treatment of DGU doctors and Dr. Mohammed Ahmed failed to send to a "podiatrist" and failed to get a culture.

21.     From 10/17/05 Dr. Ahmed and Dr. Hubbard a ANP who sometime in 11/05 gave a cleaning oinment of two (2) tubes to use until total empty use daily at dressing changes, but failed to give bed rest and culture taken. "Williams vs. U.S. supra"

22.     11/05 to 12/20/05 still no relieve in walking, or bedrest or culture taken, but Sandra Stratton Ashcraft failed to keep a supply of cultures for doctors to use, so she violated those rights of not providing adequate medical supplies at Varner, as retaliation against defendant Stratton/Ashcraft, due to her position as Varner's "HSA". In a discussion while waiting in the infirmary with other inmates, (at diabetic 3 pm call) and several inmates present, Ms. Ashcraft purposely threaten "me" by pulling me asided one on one, that if I ever talked to other inmates about the issues of CMS and how below-standard care they where that as a "jailhouse lawyer", she would get even with me and make sure she got rid of me. She did by plotting with Ms. Burnett, Ast. Warden Kim Luckett, Warden of Varner Unit on or about 8-30-2006. To which I was transferred to Malvern Unit on that day.

Witness's at trial subpoena exhibit # 12

23.     On or about 12/20/05 while being on a gate pass to DGU clinic in Pine Bluff, the Plaintiff saw Dr. Robert Scott a "wound care specialist" to which I was told, he did not do a "culture" on my L great toe, even with my bandages covered the toe, pus was even present on the bandages, this is also evidence that the negligence and below-standard of care of Dr. Scott should of gotten a "culture" sent of the results, to see what type of "pus" or infection it was, but he did not get a culture, he stated no infection in the toe, I was surprised to see that he failed to do this plus give me a MSF-207 scrip for bed rest, his report will be in medical jacket during to which I will request at discovery, "Williams vs. U.S." supra.

6

## Civil Rights Violations, Color of Law

24.    With the plots with Ms. Stratton/Ashcraft and Ms. Burnett a nurse (to which is under her supervision) plotted together to which two (2) disciplinaries was written on Aug 10, 2006 and Aug 14, 2006. Sick calls of hearing problems of the 1st disciplinary on Aug 10, 2006 prior to this date will show I had problems with my hearing.

**Exhibits 13, 14, 15, 16, will be needed and ask at discovery and present at jury trial.**

25.    With more exhibits as "preponderance of evidence" the CMS administration of Tom Bradshaw, George Wilson, Dottie Yarbough has been notified of the problems I was having, and yet never investigated the issue by coming to see me or contacted the odbudsman for CMS at this time of problems June 2, 2006 to Aug 30, 2006.

**Exhibits: 17, 18, 19, 20, 21 at discovery process for jury trial**

26.    12/23/05 or so Leland Felix from Felix Limb and Brace Co took impression of my L foot from the insole that was ordered to keep the weight bearing of the L great toe off and make this insole to allow the healing of now a growing diabetic ulcer from 10/10/05 to 10/23/05 of walking on the wound with 251 lbs plus. This insole was given after 2006, and the wait during this time became an increase of injury and damaged the chance of this ever healing while walking 2 to 3 miles a week, with poor "bus" canvas shoes" the bandage on the L great toe shown the "pus" of the infection plus eminent that ANP Connie Hubbard gave to keep area clean, no oral antibiotics until Feb 14 or so 2006 for 10 days at a time Dr. Mohamed Ahmed never increased doses or requested any intravenous drops of antibiotics or even failed to get a "culture" due to the short supply by Ms. Stratton/Ashcrafts negligence to keep supplies. Doctors are responsible, they could have called area units around Varner but never did.

Diabetic ulcer now is about a grade II or III. About a dime or nickel size wound. No pictures of the L great toe or measurements that would have helped to show that I was a "sitting duck" for amputation due to the below-standard of product that failed to provide the non weight-bearing of the L great toe.

Leland Felix never gave follow-ups of the insole once the insole was given by CMS medical staff and never called CMS at all to see where I am to check if insole was helping or made changes, even doctors Ahmed and Hubbard failed to get a consult or follow up on appointment of the insole to change or find another solution.

27.    Additional medical malpractice of doctors Olabode Olumunfin, Janice Alexander,

7

Rebecca Johnson during the 2 ½ day stay at DCU hospital on or about 2/22/06 after diagnosing my L foot that culture was taken, x-ray of foot but results of those reports where after March 1st 2006, by then I was transferred after 2 ½ days of IV drops of antibiotics at DCU because needed bed space, Dr. Ohmunfin and Dr. Anderson felt that the other 2 ½ days IV I could take at Cummins Unit so on 2/25/06 I was moved to Cummins Unit where the Doctor Sangrecta Doshi/Jain finished the orders of the above doctors and with approval of Dr. Anderson and Dr. Doshi/Join I was sent back to Varner Unit with no more antibiotics, dry dressings with 45 days layin the only time I was ever lay-in between 10/10/05 to 3/1/06, walking on infected foot, swelling, pain, trouble sleeping became a "unnecessary wanton inflicted pain", negligence, and medical malpractice of the above mention doctors. Williams vs. U.S. supra

28.     On or about 3/1/06 the transfer back to Varner Unit, I still had to walk those 2 miles or so a week to pill and chow, 4 times to get pills and treatment call, within 7 days around 3/8/06 or so while during treatment call, (2) two chips of bone cut through the muscle of the L great toe, now a grade IV diabetic ulcer, size from nickel to a quarter, I could not walk again due to the swelling, pain, redness, walking and Dr. Connie Hubbard gave me a scrip for a wheel chair to which I had for a while until a "bone scan" was done by orders of Dr. Scott back in 12/20/05, I believe that date but the "bone scan" report stated damage to the left great toe, JRMC hospital took the scan.

**Exhibit # 22 as evidence**

29.     April 10th or so 2006 at Varner Unit between Dr. Ahmed and Ms. Stratton/Ashcraft about the next procedure of which the decision by CMS was to amputate the L great toe, then appointment to Dr. John Ora Lytle to discuss the matter, I was sent to see him. I wanted a 2nd opinion because there are other treatments and procedures that not only amputation is the answer.

                              - Documents at Discovery -

30.     April 15th, 2006 or so I wanted to wait a week or so to think about the issues. I was never told from Dr. Lytle the procedures or opinions like my podiatrist told me on my issues back in 2005 prior to my incarceration so I stopped CMS at Varner until I talked to some people to decide what to do.  Again I requested a 2nd opinion and even a CMS other orthopedic like Dr. Crowell at SW Hospital but I never got that chance either.  I only denied the appointment until a week.  From 3/1/06 to 4/22/06 still no antibiotics IV or oral antibiotics therefore Dr. Ahmed

8

failed to give these medications or transfer to a unit so I can get more, just negligent to below-standard of care.

## - Documents at Discovery -

## Civil Rights Act and Color of Law Violations -

31.     On May 4th or so of 2006 a legal letter from Arkansas State Supreme Court that I never received while recovering from surgery of my amputation, both Lt. Tillman and Janice Blankenship of DGU conspired to plot to see what the letter was, AR 860 regulation of privilege mail that staff is not to open up legal mail without the presence of the inmate to whom it is sent to, this letter was placed in my medical records and stamped in the rt hand corner of the letter, I found it in my medical jacket after my return from DGU on or about June 2nd 2006. Ms. Blankenship and Lt. Tillman are responsible and liable, they never gave the letter or envelope back to me.

**Exhibits, 23, 24, 25, 26 attached or at discovery**

32.     Tom Manwaring and Dr. Hoarce Marvin Jr. along with ADC staff officials plotted to bust me with a so-called forged MSF-207 form, upon or about _11 / 11 / 06_ and _11 / 15 / 06_ two (2) disciplinaries from CMS staff to which I was blamed for a MSF-207 scrip to which I did not forged. I wanted a handwriting analysis done by ADC and they did not do it. I was found guilty of the charges and spent over 60 days in isolation for the charges. With proof of the MSF-207 scrip, I will prove that I did not forged any MSF-207 scrip, and will get justice for my 60 days or more in isolation and the defendants are liable by falsifying reports on inmate, AD 74-03 and policy of CMS.

**Exhibits 27, 28, 29, 30, 31, 32, at discovery for jury trial**

33.     Doctor Roland John Anderson medical director for CMS is responsible along with Dr. Patrick Arnold in the decisions of medical issues for CMS and inmates, their delays in treatment, delays in getting equipment, even orthopedic shoes and also HSA's are responsibles for schedules and appointments to which Stratton/Ashcraft is liable for the delays of Dr. John Ora Lytles orders of orthopedic shoes with insoles for the help with balance with the lost now of my L great toe, to which from June 2nd 2006 till Feb 9th or so of 2007 "9" months with out orthopedic shoes is a violation of civil rights and color of law. All parties failed to respond to my "serious medical needs." To which malpractice, negligence, shows in this case is below-standard of care to which the Plaintiff is seeking all damages herewithin sick call, overcharging

9

the Plaintiff 3.00 for ongoing problems of my L foot since April 20, 2006 or so still almost $30.00 plus as of July 1st 2007, CMS staff constantly knows that they are not to charge if problems are existing. SEE: Sanders vs. Horn, P.D. Pa 1996, 959 F.Supp 689 adopted 960 F.Supp 893

**Exhibits 34, 35 etc. in discovery process for jury trial**

34.     According to Arkansas Medical Malpractice Act medical expert testimony is required to proof that medical malpractice has been done, along with negligence,

**SEE exhibits 36, 37, 38, 39**

**Davis vs. Kemp 252 Ark. 925, 481 S.W.2d 712**

35.     Bone scans before incarceration of 10/10/05 from Baptist Hospital of Little Rock, AR will show no damage to the L great toe.

**SEE exhibits 40, 41**

36.     Bone Scans, venous Doppler test, x-rays, after 10/10/05 to present will show reports that will help to see that my medical issues are genuine material of facts to where doctors between 10/10/05 to 4/20/06 failed to provide adequate medical care, and was negligent and did violate state medical malpractice by being negligent and did allow me to walk on my foot with a wound, and no support that kept the L great toe from a non-weight bearing pressure off the L great toe, failed to give long term intravenous drops of antibiotics and failed to see reports on the labs of culture taken and x-rays, also waiting so long for better support shoes, not having cultures on the site of Varner, or transfer me to another unit. Totally did not know the proper treatment of a podiatrist, tried to save money be giving me medical care that was below standard of care, failed to continue antibiotics after 3/1/06 to 4/20/07 to which dr. John Lytle started long term antibiotic care to treat "gangrene" infection that damage my L great toe and was a threat to my life by gangrene, entering my whole blood system, to which led to amputation of my L great toe and other bones in my L foot.

**Evidence at discovery of reports, documents and medical history from 10/10/05 to 4/20/06.**

37.     a).     Standard of care whether in small communities or prison, etc., shall be the same standard of care in big cities or all other cities. Therefore, reasonably degree of skill and learning in similar practices.

**SEE exhibit case 42, Tuedt vs. Hagen, 70 N.D. 338, 294 N.W. 183 (1940)**

         b)     SEE exhibit # 43, Lewis vs. Angelone, W.D. Va 1996, 926 F.Supp 19

       c)      SEE exhibit # 44, Hathaway vs. Coughlin, C.A. 2 (N.Y.) 1996, 99 F.3d 550

38.     That with the presence of a medical condition that significantly affects an individuals daily activities or the existence of chronic and substantial pain "is a serious medical need" my L great toe and L foot affected me from 10/10/05 to 4/20/06 daily "unnecessary wanton inflicted pain".

SEE exhibit # 45, McGuckin vs. Smith, 974 F.2d 1050, 1060 (9th Cir.) 1992 federal case.

      Wherefore, Defendants have violated and are liable of damages of the amputation of my L great toe, from 10/10/05 to 4/20/06 walking on a open wound of a ¼" round grade I or II diabetic ulcer, with a weight-bearing pressure of 251 lbs to 270 lbs throughout the above stated time frames, the distance of this walking was over 2 to 3 miles a week, which the wound grew to over a quarter "size" with pus throughout the 10/10/05 to 4/20/06 with a culture only taken on or about 2/23/06, doctors failed to se the report of those lab reports, to check what type of infection, so to treat the right antibiotics to the type of infection, report came back on or about March 1st, 2006 or so, to which even x-ray report taken by Dr. Olumunfin orders, still the Plaintiff was forced to walk on a infected foot with out a serum test of the levels of infections, to which Plaintiff after being transferred back to Varner Unit. In the 7th day of March of 2006 or so the two (2) chips of bone that cut through the muscle of the L great toe shown that the L great toe was damage. Therefore after a month later or so the bone scan report shown that the damage was done.

      With the preponderance of the evidence and discovery of documents, mars reports, doctors E-am is reports that each tried to perform the duties of a skilled doctor of a "podiatrist" or a "orthopedic doctor," each was not skilled with diabetics with foot problems to where damages of the Plaintiff request as such:

      As a skilled trained HVAC, welder, electrician, maintenance mechanic, who must use ladders, stairs, climbing, picking up items or equipment over 25 to 50 lbs, a loss of balance, which now persist for life, the work history of the Plaintiff in rehabilitation of a new career, possible total disability future regular orthopedic shoes required for balance. A mere lifespan of approx 25 more years, salary between $12,000.00 to 25,000.00 a year, abnormal problems still of the left foot, with a fallen arch, and the cosmetic and se of the L foot and absence of the L great toe, total damages of rehabilitation and orthopedic shoes at awards of $100,000 dollars from doctors liable for rehabilitation and career changes and orthopedic shoes for 25 years.

PAGE 20/28 * RCVD AT 8/8/2007 5:28:42 AM [Central Daylight Time] * SVR:FAXSERVE/0 * DNIS:0 * CSID: * DURATION (mm-ss):09-56

Compensatory Damages: $100,000.00 per defendant that has given me inadequate medical care, below-standard of care, medical malpractice, negligence, from the erroneous decisions of misdiagnosis of my L foot and L great toe, ANP's and medical doctors should be trained with more issues of "diabetics with foot problems" or send patients to a "podiatrist" to which CMS can and shall contract a podiatrist in the near future for all inmates.

From 10/10/05 to 4/20/06: doctors took a professional oath that is a medical oath of Hippocratic oath to give all patients adequate medical care no matter where or who a patient lives or is. Tactics of CMS to save profits by providing below-standard of care, and with a contract with ADC for over 56 million dollars in its contract or so, $100,000 (one-hundred thousand dollars) per defendants of these doctors and ANP's.

1)      Janice Alexander ANP of DGU of Pine Bluff, AR between dates of 10/10/05 to 10/17/05 and 2/23/05 to 2/26/05. These dates are approx in which I was in their medical care.

2)      Rebecca Johnson ANP of DGU of Pine Bluff, AR between dates of 10/10/05 to 10/17/05 and 2/23/05 to 2/26/05. These dates are approx in which I was in their medical care.

3)      Olabode Olumunfin Doctor of DGU of Pine Bluff, AR between dates of 10/10/05 to 10/17/05 and 2/23/05 to 2/26/05. These dates are approx in which I was in their medical care.

4)      Mohammed Ahmed Doctor of Varner Unit between 10/17/05 to 2/22/06, 3/1/06 to 4/20/06. These dates are approx in which I was in their medical care at Grady, AR.

5)      Sangreeta Doshi/Jain of Cummins Unit between 2/26/05 to 3/1/06 in which these dates are approx dates when I was in her medical care at Grady, AR.

6)      Dr. Roland (John) Anderson medical director of CMS of Ark. at Pine Bluff, AR regional office from dates 10/10/05 to the 4/20/06 amputation. His position was the head medical director that keeped in contact with all CMS doctors in which the Plaintiff was in their care.

7)      Robert Scott, doctor of DGU clinic and wound care of CMS and Dermott unit. Part time with Varner unit while on call. Dates between 12/20/05 to 4/20/06 in which unknown dates in which I was in his medical care.

8)      Hoarce Marvin, jr. doctor of NCU Unit at Calico Rock, AR for his falsifying report of 005's in which the Plaintiff did not forgo or alter a MSF-207 that Dr. Marvins jr's testimony of that 005 report caused a decision by ADC employee Brent Brewer to find the Plaintiff guilty of such disciplinaries listed from CMS at North Central Unit.

Punitive Damages: In the amount of $100,000.00 pre defendant of the doctors and ANPs

PAGE 21/28 * RCVD AT 8/8/2007 5:28:42 AM [Central Daylight Time] * SVR:FAXSERVE/0 * DNIS:0 * CSID: * DURATION (mm-ss):09-56

role, being a medical professional, doing medical diagnosis, claiming to be a skill professional, in the care of being a "foot and wound care" specialists. Preponderance of the evidence that he State Medical Board of Arkansas, that most of CMS doctors are not specialist, just a general M.D.

With a continuance ongoing problems since amputation of the left toe and surgery scars, pain, nerve pain, the abnormal look and disability of the use of the left foot. The emotional damages of the pain and suffering of the swelling, throbbing, unnecessary walking on a infected foot from 10/10/05 to 4/20/06. The Plaintiff was a "sitting duck" for amputation. The roles of each doctor either working together, or working separate, the patient/doctor relationship, was broken due to uneducated, unskilled, standard of care, has resulted a long term disability, and many future setbacks of the Plaintiffs life by this disability. Not only career changes, but a rehabilitation of a complete different career, that may be a sitting down, job, or a less valued job that may also be a part time job, of only walking in short periods of time.

The Plaintiff mental status had become a roller coaster ride, of retaliation by CMS staff members, "cruel and unusual punishment" to which the Plaintiff had many untreated mental health issues during this whole ordeal. This is with the "official capacity" of the defendants their jobs in which they are liable.

"Personal Capacity": for the recommended damages of the "personal capacity" of those involved in this case, those defendants if jury seems to add to the requested damages, a $25,000.00 personal damages per defendant for each of their conduct that when it became a personal retaliation by the Plaintiffs to which they are not to retaliate, or falsifying documents and reports and delays in getting treatment, supplies and orthopedic shoes.

Sandra Stratton/Ashcraft: your personal and professional conduct shall be notified by the "Licensing Board of Nursing" for your termination or probation of your license of being a nurse, your professional conduct was to retaliate for the redress of the grievances the Plaintiff wrote at Varner Unit. The role you played with ADC officials in having me transferred to Malvern Unit on 6-20-06 even delayed my orthopedic shoes, the gashong catheter that was in my chest and not removed until 9/11/06. Several months that I did not have to have this in my chest. Still having infection in the area as of this date 6/21/07.

Also the lost of completing my vo-tech programs as a "disabled person", my religious right of being a Church of Christ family at Varner Unit, loosing the chance to be release at my

PAGE 22/28 * RCVD AT 8/8/2007 5:28:42 AM [Central Daylight Time] * SVR:FAXSERVE/0 * DNIS:0 * CSID: * DURATION (mm-ss):09-36

original T.E. date of 4/18/07 and the 60 days and my 1ˢᵗ disciplinary ever in the ADC since 1987, perfect record gone.

The Plaintiff also ask for a letter of apology to the Plaintiff of your actions and a letter to the Arkansas Parole Board for your actions in this case.

Joann Burnett: for your role of writing two (2) bogus disciplinaries from 8/10/06, 8/14/06 and your plot with Ms. Ashcraft for writing them and loosing my class and "60 days" good time, retaliation, and violating the "Florence Nightingale oath", a letter to the Licensing Board of Nursing by you with your actions in this case; the Parole Board of your actions of misconduct professionally, $25,000.00 damages personally and that capacity of your conduct.

Tom Manwaring: for retaliation of having me placed in isolation with his disciplinary that was bogus, the MSF-207 scrip that I was accused of forging, of 9/20/06, the plot with ADC for having me placed in isolation and being found guilty by Sgt. Brent Brewer, your role in all of the Plaintiff, and letter to the Parole Board also of your actions and conduct.

$25,000.00 damages awarded to the plaintiff in your personal capacity of your conduct.

Doctor Hoarce Marvin Jr.: your role as a doctor and a medical professional, it's a sad part as a doctor that you like to save profits for CMS and give inadequate medical care to inmates and the Plaintiff. The 005's you wrote in statement of that MSF-207 scrip of 9/20/06 was totally your handwriting and your decision. The Plaintiff spent over "70" days in isolation because of your report that was a lie. A letter of apology of your actions be sent to the Arkansas State Medical Board is needed from you of this action. A letter to the Parole Board of the misconduct and plot and lie that you stated that document was forged. Your job at Calico Rock shall be "tertimated" and damages of your so-called Hippocratic oath you violated.

Damages in personal capacity: $100,000.00 for the conduct that was not professional and malpractice.

Janice Blankenship: your role of placing that legal letter from the State Supreme Court and stamped it on May 4ᵗʰ 2006, with Lt. Tillman's knowledge and plot in his role between each other was a violation of my civil rights and your conduct as a CMS employee, your misconduct along with the job of obudsman and your misuse of power and the act of not investigating my complaint with Ms. Sandra Stratton/Ashcraft, and not seeing the truth your damages to the Plaintiff are as such.

$50,000.00, personal capacity, and a letter that you will cooperate with my federal case against

14

ADC.

5:06CV296, your role and knowledge of the Lt. Tillman's opening of my legal mail without my knowledge or presence and placing that legal letter in my "medical jacket" to keep my from finding that letter.

Personal capacities damages of the other defendants: $50,000.00 of the violations both professionally and officially.

STATE OF ARKANSAS

COUNTY OF IZARD

I, Tommy Henderson, after first being duty sworn, do hereby swear, depose and state that the following above mention motion of Color of Law, Arkansas Civil Rights Act of 1993 and Art 937 of 1997 Medical Malpractice suit and ACA 16-114-201 thru 209 the complaint to the defendants of CMS and Felix Limb and Brace Co. are true and with the best of the Plaintiff's knowledge.

I further swear that the description of the incidents contained herein, is a true, accurate and impartial description to the best of my knowledge, information and belief until discovery process.

Name: _Tommy Henderson_

Date: _7/20/07_

Signature: _____

Subscribed and Sworn to before me this __20__ day of __July__, 2007.

_____ Notary Public

My commission expires: __12/26/2015__

Certificate of Service

On this day __21__ of __July__, 2007 this copy of the above style motion and other

15

Aug. 8. 2007 5:38AM

copies of the foregoing motion was mailed to:

1. Judge Tim Weaver                    2.
   P.O. Box 1361
   Melbourne Ar 72557

3.                                     4.

5.                                     6.

By U.S. mail postage paid and or truck mail sent by the plaintiff from North Central Unit of ADC.

Tommy Henderson #93098